RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 25, 2016

ABEL ACOSTA, CLERK

WR-48,152-08
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/25/2016 11:50:04 AM
Accepted 5/25/2016 1:45:41 PM
ABEL ACOSTA
CLERK

NO. WR-48,152-08

IN THE

COURT OF CRIMINAL APPEALS

_____

EX PARTE GARCIA GLEN WHITE, Applicant

_____

Successive Application for a Writ of Habeas Corpus
In Cause No. 0723857-E from the
180th Judicial District Court of Harris County

_____

**BRIEF FOR THE
OFFICE OF CAPITAL AND FORENSIC WRITS
AS *AMICUS CURIAE*
SUPPORTING APPLICANT**

_____

Benjamin B. Wolff, Director
(Texas Bar No. 24091608)
Office of Capital and Forensic Writs
1700 Congress, Suite 460
Austin, Texas 78701
(512) 463-8502
Benjamin.Wolff@ocfw.texas.gov

# IDENTITY OF *AMICUS CURIAE*

The Office of Capital and Forensic Writs ("OCFW") is a Texas state public defender office located in Austin, Texas that represents individuals in state post-conviction litigation. The OCFW, originally the Office of Capital Writs, opened its doors in 2010, representing death-sentenced persons in state post-conviction proceedings exclusively. On September 1, 2015, the scope of the Office's mission expanded to include the representation of a select number of individuals raising challenges to their convictions through forensic science writs, and its name changed to reflect the expanded mandate.

The OCFW represents most people sentenced to death in Texas in initial state habeas corpus applications and related proceedings and is committed to exceptional, client-centered, post-conviction representation, consistent with the Guidelines and Standards for Texas Capital Counsel and the Supplementary Guidelines and Standards for the Mitigation Function of Defense Teams in Texas Death Penalty Cases adopted by the State Bar of Texas.

i

## <u>TRAP RULE 11 DISCLOSURE</u>

This brief is tendered on behalf of OCFW. No fee was or will be paid for the preparation of this brief, and all costs were borne by OCFW.

# TABLE OF CONTENTS

IDENTITY OF AMICUS CURIAE……………………………………………………i

TRAP RULE OF DISCLOSURE……………………………………………………ii

TABLE OF CONTENTS……………………………………………………………iii

INDEX OF AUTHORITIES…………………………………………………………iv

STATEMENT OF THE CASE………………………………………………………1

INTRODUCTION…………………………………………………………………...4

ARGUMENT……………………………………………………………………..….6

   I.     The Word "Convicted" in Article 11.073 Should Be
        Interpreted to Encompass Both Verdict and
        Sentence……………………………………………………………..6

   II.    Article 11.073 Should Be Interpreted to Permit
        Forensic Science Writs Relating to Claims of
        Innocence of the Death Penalty…………………………………….7

   III.   Allowing Article 11.073 Writs Raising Forensic Science
        Claims Relating to Punishment Is Consistent With
        Eighth Amendment Jurisprudence……………………………….16

PRAYER………………………………………………………………………...…..18

CERTIFICATE OF SERVICE……………………………………………………….19

CERTIFICATE OF COMPLIANCE………………………………………………….19

# INDEX OF AUTHORITIES

**Federal Cases**

*Ake v. Oklahoma,* 470 U.S. 68 (1985)…………………………………………17

*Atkins v. Virginia,* 536 U.S. 304 (2002)…………………………………9, 10

*Baze v. Rees,* 553 U.S. 35 (2008)…………………………………………17

*Beck v. Alabama,* 447 U.S. 625 (1980)…………………………………16

*Enmund v. Florida,* 458 U.S. 782 (1982)…………………………………9, 13

*Gardner v. Florida,* 430 U.S. 349 (1977)………………………………....16

*Godfrey v. Georgia,* 446 U.S. 420 (1980)………………………………16

*Gregg v. Georgia,* 428 U.S. 153 (1976)…………………………………16

*Herrera v. Collins,* 506 U.S. 390 (1993)…………………………………4, 7

*In re Johnson,* 334 F.3d 403 (5th Cir. 2003)…………………………………10

*Johnson v. Mississippi,* 486 U.S. 578 (1988)……………………………9, 16

*Johnson v. Singletary,* 938 F.2d 1166 (11th Cir. 1991)……………………..9

*Kyles v. Whitley,* 514 U.S. 419 (1995)…………………………………...17

*Lockett v. Ohio,* 438 U.S. 586 (1978)…………………………………16

*Mills v. Maryland,* 486 U.S. 367 (1988)………………………………...16

*Napue v. Illinois,* 360 U.S. 264 (1959)…………………………………13

*Roper v. Simmons,* 543 U.S. 551 (2005)…………………………………9, 10

*Sawyer v. Whitley*, 505 U.S. 333 (1992)………………………….…...8, 9

*Tison v. Arizona*, 481 U.S. 137 (1987)……………………………….9

*United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988)…………………………7

*Woodson v. North Carolina*, 428 U.S. 280 (1976)…………………………16

*Zant v. Stephens*, 462 U.S. 862 (1983)……………………………………17


**State Cases**

*Ex parte Chabot,* 300 S.W.3d 768 (Tex. Crim. App. 2009)…………….…13

*Ex parte Elizondo,* 947 S.W.2d 202 (Tex. Crim. App. 1996)……………4, 8

*Ex parte Robbins,* __ S.W.3d __, 2016 WL 370157 (Tex. Crim. App. Jan. 27, 2016)……………………………………….…15

*Ex parte White,* No. WR-48,152-01 (Tex. Crim. App. Feb. 21, 2001) (unpublished)……………………………………………………..2

*Ex parte White,* No. WR-48,152-02 (Tex. Crim. App. Apr. 24, 2002) (unpublished)……………………………………………………2

*Ex parte White,* No. WR-48,152-03 (Tex. Crim. App. May 6, 2009) (unpublished)……………………………………………………..2

*Ex parte White,* No. WR-48,152-04 (Tex. Crim. App. May 6, 2009) (unpublished)……………………………………………………..2

*In re Allen*, 462 S.W.3d 47 (Tex. Crim. App. 2015)……………………..…11

*Mitchell v. State*, 931 S.W.2d 950 (Tex. Crim. App. 1996)………………11

*TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432 (Tex. 2011)….7

*White v. State*, No. AP-73,850 (Tex. Crim. App. June 17, 1998)
     (unpublished)...........................................................................1

**State Statutes**

Tex. Code Crim. Proc. art. 11.07............................................ *passim*

Tex. Code Crim. Proc. art. 11.071.............................…..……*passim*

Tex. Code Crim. Proc. art. 11.072....................................………5

Tex. Code Crim. Proc. art. 11.073...................................…….……*passim*

Tex. Code Crim. Proc. art. 37.071.......................................……10, 11

Tex. Code Crim. Proc. art. 38.43....................................................16

**Legislative History**

BILL ANALYSIS, Tex. S.B. 344.....................................................15

**Other Authorities**

William N. Eskridge, Jr., *et al.*, Cases and Materials on
Legislation (4th ed. 2007)......................................................7

NO. WR-48,152-08

IN THE

COURT OF CRIMINAL APPEALS

---

EX PARTE GARCIA GLEN WHITE, Applicant

---

Successive Application for a Writ of Habeas Corpus
In Cause No. 0723857-E from the
180th Judicial District Court of Harris County

---

**BRIEF FOR THE OFFICE OF CAPITAL AND
FORENSIC WRITS AS
*AMICUS CURIAE* SUPPORTING APPLICANT**

---

TO THE COURT OF CRIMINAL APPEALS:

## STATEMENT OF THE CASE

Garcia Glen White was indicted for capital murder under Cause Number 723847 in the 180th Criminal District Court of Harris County. In July 1996 he was found guilty and sentenced to death. The trial court's judgment was affirmed on appeal. *White v. State*, No. AP-73,580 (Tex. Crim. App. June 17, 1998) (unpublished). No petition for writ of certiorari was filed.

1

Mr. White filed an application for writ of habeas corpus, containing numerous grounds, on October 16, 1998. That application was denied on February 21, 2001, by the Court of Criminal Appeals. *Ex parte White*, No. WR-48,152-01 (Tex. Crim. App. Feb. 21, 2001) (unpublished). Three subsequent applications for writs of habeas corpus were filed in 2002, 2007, and 2009. All were denied. *Ex parte White*, No. WR-48, 152-02 (Tex. Crim. App. Apr. 24, 2002) (unpublished); Nos. WR-48,152-03 and WR-48,152-04 (Tex. Crim. App. May 6, 2009) (unpublished).

After those applications were resolved, the Texas legislature revised state habeas procedures to provide a specific remedy to address convictions based on flawed science or where advances in science afforded critical favorable evidence to a convicted individual. TEX. CODE CRIM. PROC. art. 11.073. These revisions went into effect on September 1, 2013. Article 11.073 now authorizes a court to grant relief on a habeas corpus application containing "relevant scientific evidence" that "was not available to be offered" at the convicted person's trial or that "contradicts scientific evidence relied upon by the state at trial." *Id*. 11.073(a).

On January 20, 2015, with an execution date pending, Mr. White submitted his fourth subsequent application for writ of habeas corpus

with this Court. On January 27, 2015 this Court stayed Mr. White's execution pending further order of the Court. On March 24, 2015, this Court denied the first two claims in Mr. White's petition as barred by Art. 11.071 § 5, but ordered further briefing on his third claim, that newly discovered scientific evidence would have provided compelling mitigating evidence that would have likely changed the jury's answers to the special issues. Specifically, before determining whether the claim qualifies for a remand to the trial court, this Court ordered the parties to brief the issue of whether Article 11.073 applies to new scientific evidence relevant only to the punishment.

## INTRODUCTION

In discussing post-conviction claims of actual innocence, both this Court and the United States Supreme Court have recognized that "the legitimacy of punishment is inextricably entwined with guilt." *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996) (quoting *Herrera v. Collins*, 506 U.S. 390, 422 (1993) (Blackmun, J., dissenting)). This is particularly true in capital cases, where the prosecution commonly relies on evidence not only of the capital offense but also of prior convictions and allegations of unadjudicated offenses in seeking to persuade the jury to impose a death sentence. As a result, the jury's consideration of the defendant's guilt of the capital offense, as well as of other criminal offenses, is necessarily embedded in its assessment of punishment.

In 2013, the Texas Legislature created Article 11.073 as a dedicated writ and procedure to allow for the litigation of claims related to faulty forensic science. Under this writ and procedure, a court may grant a convicted person relief on an application for a writ of habeas corpus based on new scientific evidence that was not available to be offered by a convicted person at the time of trial or that contradicts the scientific evidence relied on by the State at trial. *See* TEX. CODE CRIM. PROC., art.

4

11.073(a). In order to grant relief, a court must find, *inter alia*, that "had the scientific evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted." *Id.* at (b)(2).[1]

Before this Court is the question of whether to interpret the word "convicted" to encompass the guilty verdict *and* sentence, and thereby permit an Article 11.073 application that challenges the sentence imposed on the basis of flawed science. To exclude from the ambit of

---

[1] The relevant text of the statute is as follows:

> (a) This article applies to relevant scientific evidence that:
>     (1) was not available to be offered by a convicted person at the convicted person's trial; or
>     (2) contradicts scientific evidence relied on by the state at trial.
> (b) A court may grant a convicted person relief on an application for a writ of habeas corpus if:
>     (1) the convicted person files an application, in the manner provided by Article 11.07, 11.071, or 11.072, containing specific facts indicating that:
>         (A) relevant scientific evidence is currently available and was not available at the time of the convicted person's trial because the evidence was not ascertainable through the exercise of reasonable diligence by the convicted person before the date of or during the convicted person's trial; and
>         (B) the scientific evidence would be admissible under the Texas Rules of Evidence at a trial held on the date of the application; and
>     (2) the court makes the findings described by Subdivisions (1)(A) and (B) and also finds that, had the scientific evidence been presented at trial, on the preponderance of the evidence the person would not have been convicted.

TEX. CODE CRIM. PROC., art. 11.073.

5

Article 11.073 claims that relate only to punishment would deprive the law of its contemplated meaning and risk unintended, arbitrary results. Rather, this Court should construe Article 11.073 consistent with the constitutional principles underlying the Texas death penalty statutory scheme itself.

## ARGUMENT

### I. The Word "Convicted" In Article 11.073 Should Be Interpreted To Encompass Both Verdict And Sentence.

Indisputably, an applicant may raise constitutional challenges relating to both the guilt/innocence and punishment phases of a trial. An 11.071 application may challenge both a guilty verdict and the death sentence, just the guilty verdict, or just the death sentence. This is true of both initial applications and subsequent applications for post-conviction relief. Article 11.071, however, defines the claims cognizable under that section as those relating to a "conviction being challenged." *See* TEX. CODE CRIM. PROC. art. 11.071 § (5)(b)(2) & § (6)(c)(2). *See also* TEX. CODE CRIM. PROC. art. 11.07 § (3)(c) & § (4)(a).

6

As the Texas Supreme Court has noted, "language cannot be interpreted apart from context." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011). *See also United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme."); William N. Eskridge, Jr., *et al.*, Cases and Materials on Legislation 862 (4th ed. 2007) (describing the "Whole Act Rule"). Thus, the word "convicted" as used in Article 11.073 should be interpreted in the context of Article 11.071, where the word "conviction" clearly encompasses both verdict and sentence.[2]

## II. Article 11.073 Should Be Interpreted To Permit Forensic Science Writs Relating To Claims Of Innocence Of The Death Penalty.

In the unique context of death-penalty cases, the Supreme Court has recognized two distinct claims of "innocence" premised on "new" evidence discovered after trial. This Court should construe Article 11.073 to allow for consideration of both.

---

[2] We are aware of statutory interpretation arguments made by the Texas Criminal Defense Lawyers Association *et al.* as amici, *see* Amicus of TCDLA et al., at 16-23, and while we believe those arguments to be cogent, we do not repeat them here.

The first type of innocence claim is one where the convicted person asserts that he is factually innocent of the capital offense. *Herrera v. Collins*, 506 U.S. 390, 417 (1993) ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence,' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim"); *Ex parte Elizondo*, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996) (holding that "claims of actual innocence are cognizable by this Court in a postconviction habeas corpus proceeding whether the punishment assessed is death or confinement").

Secondly, the Supreme Court has also recognized that a capital defendant may be "innocent of the death penalty." *Sawyer v. Whitley*, 505 U.S. 333, 345 (1992). The Court has said that "innocence of the death penalty" means "allowing a showing in addition to innocence of the capital crime itself that there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.* (internal quotation marks and footnote omitted). The Court has adopted this phrase to refer to those defendants who are not eligible for a death

sentence *either* because the State is unable to prove the facts necessary to make the defendant eligible for a death sentence as a matter of state law, *Sawyer v. Whitley*, 505 U.S. 333 (1992) (defining the standard for proving "actual innocence of the death penalty" and holding that in order to proceed with a subsequent federal petition raising a constitutional claim affecting punishment only, the petitioner must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would have found him eligible for the death penalty under [state] law"),[3] *or* because the defendant is a member of a class that is categorically exempt from the death sentence under the Eighth Amendment. *See*, *e.g.*, *Enmund v. Florida*, 458 U.S. 782 (1982), *as modified by Tison v. Arizona*, 481 U.S. 137 (1987) (holding that the Eighth Amendment prohibits imposition of death penalty on aider or abettor who does not himself kill, attempt to kill, or intend that a killing takes place or that lethal force

---

[3] *See also, e.g., Johnson v. Singletary*, 938 F.2d 1166, 1183 (11th Cir. 1991) ("Thus, a petitioner may make a colorable showing that he is actually innocent of the death penalty by presenting evidence that an alleged constitutional error implicates all of the aggravating factors found to be present by the sentencing body. That is, but for the alleged constitutional error, the sentencing body could not have found any aggravating factors and thus the petitioner was ineligible for the death penalty. In other words, the petitioner must show that absent the alleged constitutional error, the jury would have lacked the discretion to impose the death penalty; that is, he is ineligible for the death penalty.").

will be employed, *and* who was not a "major participant" in the felony and whose mental state was not one of "reckless indifference to human life"); *Atkins v. Virginia*, 536 U.S. 304 (2002) (holding that the Eighth Amendment prohibits imposition of the death penalty on intellectually disabled defendants); *Roper v. Simmons*, 543 U.S. 551 (2005) (holding that the Eighth Amendment prohibits imposition of the death penalty on juvenile offenders).[4]

The statutory "special issues" that Texas juries must answer before a defendant can be subjected to the death penalty attempt to capture both categories of "innocent of the death penalty" that the Supreme Court delineated in *Sawyer*. Before a jury considers whether sufficient mitigating circumstances exist that warrant a sentence of life in prison without parole rather than a death sentence, it must first find that the State has proved beyond a reasonable doubt that:

- The defendant would constitute a continuing threat to society, Art. 37.071 § (2)(b)(1); and

- where a defendant has been convicted at the guilt phase under the "law of parties," whether the defendant actually caused the death of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or

---

[4] *See also, e.g., In re Johnson*, 334 F.3d 403, 404-05 (5th Cir. 2003) (holding that defendant's evidence of mental retardation made him innocent of the death penalty).

anticipated that a human life would be taken, Art. 37.071 § (2)(b)(2).

Furthermore, where a defendant asserts that intellectual disability renders him exempt from the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), this Court has endorsed the submission of a "special issue" to the jury regarding whether a defendant is intellectually disabled. *See, e.g., In re Allen*, 462 S.W.3d 47, 51-52 (Tex. Crim. App. 2015).

In capital cases, the State commonly offers evidence of unadjudicated extraneous offenses and conduct in connection with the jury's determination of the special issues that relate to death penalty eligibility. Article 37.071 § (2)(a)(1) allows the State to introduce evidence of unadjudicated extraneous conduct relevant to sentence. When evidence of an extraneous offense has been offered, the law requires that it be proved beyond a reasonable doubt that the defendant committed the offense, regardless of the phase of trial in which it is offered. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996).

While the law requires that an extraneous offense be proved beyond a reasonable doubt, when extraneous offenses are not otherwise adjudicated there is not another forum or case in which they may be

11

challenged on appeal or on post-conviction proceedings. This means that in the event that the evidence supporting the unadjudicated extraneous offense is undermined by new scientific evidence, *see, e.g.,* Article 11.073 § (a)(1), the *only* case in which it may be challenged is the case in which it was introduced into evidence—and such an attack is, by nature, collateral.

Article 11.073 provides the only means to collaterally attack unadjudicated extraneous offenses that are undermined by new scientific evidence. Article 11.073 applies to "relevant scientific evidence that: (1) was not available to be offered by a convicted person at the convicted person's trial; or (2) contradicts scientific evidence relied on by the state at trial." Thus, the statute contemplates two distinct scenarios: new forensic evidence that did not exist at the time of trial and new forensic evidence that contradicts the evidence presented at trial.

With respect to punishment questions, if new forensic evidence contradicts the evidence presented during the punishment phase, a habeas applicant does not have to rely exclusively on Article 11.073 to provide a procedural mechanism to challenge junk science presented at trial; instead, he or she may raise a junk science claim under Article

11.073 as well as a *Chabot*[5] or *Napue*[6] claim under Article 11.071. In other words, an applicant may challenge the faulty science employed at trial under both Article 11.073 and a due-process theory.

If, however, a death-sentenced person discovers new scientific evidence relevant to punishment considerations that was unavailable at the time of trial that would have changed the result had it been presented, the exclusive procedural pathway through which relief can be sought would be through Article 11.073.

Consider a hypothetical situation involving a law-of-parties case. A defendant is convicted at trial of capital murder, based on a theory that he was the triggerman in a case involving multiple actors. The defendant always maintained that he did not kill the decedent or intend for the decedent to be killed or reasonably foresee it, so he was "innocent of the death penalty" pursuant to *Enmund v. Florida,* 458 U.S. 782 (1982). The defendant, however, was rendered eligible for the death penalty after the jury affirmatively answered the "future dangerousness" special issue and

---

[5] *Ex parte Chabot,* 300 S.W.3d 768, 770-71 (Tex. Crim. App. 2009) (holding that the defendant's due process rights were violated by state's unknowing presentation of false testimony).

[6] *Napue v. Illinois,* 360 U.S. 264 (1959) (holding that knowing use of false testimony violates due process).

13

found that the defendant had "actually killed" the decedent. Years later, DNA tests were conducted on the gun that exonerated the defendant as the triggerman and inculpated a co-defendant. The new forensic evidence would support a constitutional claim of "innocent of the death penalty." Unless Article 11.073 applies to punishment-phase claims of death eligibility, the hypothetical defendant in this scenario is left without a vehicle to challenge his unconstitutional sentence.

Consider a hypothetical involving a defendant who was found guilty of capital murder. To meet its burden of proof regarding the future dangerousness special issue, the State offered evidence of an unadjudicated homicide. The jury answered the "future dangerousness" special issue affirmatively, and the defendant was rendered eligible for the death penalty. Years later, post-conviction counsel obtained the physical evidence from this unadjudicated extraneous offense, and sought to have it tested for the first time. The test results exonerated the defendant of this otherwise unadjudicated homicide and made it probable that the jury would not have answered the future dangerousness question affirmatively. The new forensic evidence would thus support a constitutional claim of "innocent of the death penalty." Unless Article

14

11.073 applies to punishment-phase claims of death eligibility, the hypothetical defendant in this scenario would be left without a vehicle to challenge his unconstitutional sentence.

Employing these two hypotheticals again, but instead of relying on new scientific evidence that was unavailable at trial, *see* art. 11.073 § (a)(1), consider that the applicant argued that the relevant scientific evidence contradicted the evidence presented at trial. *See id.* § (a)(2). In the latter scenario, a claim of "innocent of the death penalty" could be raised as a due process claim under Article 11.071, while in the former, an applicant would be left without a path to relief simply because *no* scientific evidence was presented at trial, and there was thus no false testimony or evidence presented. Such an arbitrary result is inconsistent with the intent of Article 11.073. *See, e.g.,* BILL ANALYSIS, Tex. S.B. 344 (explaining that Article 11.073 was intended to create a "single standard" for how to deal with convictions unsupported by science); *Ex parte Robbins,* __ S.W. 3d __, 2016 WL 370157 at *27 (Tex. Crim. App. Jan. 27, 2016) (per curiam, denying rehearing) (J. Newell, concurring) ("By enacting Article 11.073 without any express limitation on what

constitutes 'scientific knowledge,' the Legislature tipped the scales in favor of accuracy perhaps at the expense of finality.").[7]

## III. Allowing Article 11.073 Writs Raising Forensic Science Claims Relating to Punishment Is Consistent With Eighth Amendment Jurisprudence.

The Supreme Court has repeatedly recognized that the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio,* 438 U.S. 586, 604 (1978) (emphasis added).[8]  Consequently, when "a defendant's life is at stake, the Court has been particularly sensitive to insure that every safeguard is observed." *Gregg v. Georgia*, 428 U.S. 153, 187 (1976). As a result, the Supreme Court has embraced procedures that minimize the risk of error in capital cases, even if these same procedures are not

---

[7] In 2013, the same year Article 11.073 was enacted, Senate Bill 1292 was also signed into law, amending Article 38.43 of the Texas Code of Criminal Procedure and expanding the availability of DNA testing to persons facing capital murder prosecution.  *See* TEX. CODE CRIM. PRO. art. 38.43. Under this law, there is a right to pretrial DNA testing of all biological evidence collected as part of the investigation into the offense.  *Id.* The legislature did not draw any distinction between biological evidence that might be relevant to the determination of guilt and that relevant to questions of punishment.

[8] *Accord Johnson v. Mississippi,* 486 U.S. 578, 584 (1988); *Mills v. Maryland*, 486 U.S. 367, 383-84 (1988); *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Beck v. Alabama*, 447 U.S. 625 (1980); *Gardner v. Florida*, 430 U.S. 349 (1977); *Godfrey v. Georgia*, 446 U.S. 420, 427-28 (1980); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality opinion).

constitutionally mandated in a noncapital case. As former Chief Justice Burger stated, the finality of a death sentence "warrants protections that may or may not be required in other cases." *Ake v. Oklahoma*, 470 U.S. 68, 87 (1985) (Burger, C.J., concurring). Indeed, procedural safeguards are particularly essential in capital cases because "the risk of error in capital cases may be greater than in other cases because the facts are so often disturbing that the interest in making sure the crime does not go unpunished may overcome residual doubt concerning the identity of the offender." *Baze v. Rees*, 553 U.S. 35, 84-85 (2008).

Further, the Eighth Amendment "heightened reliability" doctrine extends to heightened standards of *review* once a death sentence has been assessed at trial. *See, e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 422 (1995) ("[O]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case") (internal quotation marks omitted); *Zant v. Stephens*, 462 U.S. 862, 885 (1983) ("[A]lthough not every imperfection in the deliberative process is sufficient, even in a capital case, to set aside a state-court judgment, the severity of the sentence mandates careful scrutiny in the review of any colorable claim of error").

In sum, the Eighth Amendment's "heightened reliability" doctrine applies to the procedural protections afforded to capital prisoners, whether the procedures apply before, during, or after a capital trial. These procedural protections are not just aimed at ensuring that only the guilty are convicted, but also that only the most death-worthy prisoners are sentenced to death.

## PRAYER

The Amicus prays that this Court construes the word "convicted" in Article 11.073 to encompass claims relating to both guilt and punishment.

Respectfully submitted,

**OFFICE OF CAPITAL AND FORENSIC WRITS**

*/s/ Benjamin B. Wolff*
Benjamin B. Wolff
(Texas Bar No. 24091608)

1700 North Congress Avenue,
Suite 460
Austin, Texas 78701
(512) 463-8600
(512) 463-8590 (fax)
Benjamin.Wolff@ocfw.texas.gov

18

## CERTIFICATE OF SERVICE

I certify that a copy of this Amicus Curiae Brief in Support of the Applicant (White) has been served upon the Harris County District Attorney's Office and upon the attorney for the Applicant (Patrick McCann), on May 25, 2016, by electronic service.

/s/ Benjamin B. Wolff
**BENJAMIN B. WOLFF**


## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 3,513 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Benjamin B. Wolff
**BENJAMIN B. WOLFF**

19